UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SUSAN CASTELLO**, | Case No. 5:09 CV 2569 |
| Plaintiff, | Judge Lesley Wells |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | Magistrate Judge James R. Knepp II |

### Introduction

Plaintiff Susan Castello is appealing the administrative denial of Child's Supplemental Security Income (Child's SSI) on behalf of her son.  This Court has jurisdiction pursuant to 42 U.S.C.§§ 405(g) and 1383(c)(3).  This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2.  At issue is the conclusion by an administrative law judge (ALJ) that Plaintiff's son's condition does not qualify for these benefits.

### ALJ's Findings

Following review of the medical record and reports from the school and instructors, the ALJ found Plaintiff's son was a school age child who has not engaged in substantial gainful activity. (Tr. 13).  He suffers the severe impairment of oppositional defiant disorder, which has been variously described as a speech delay, learning disorder, and attention deficit disorder.  The ALJ concluded this impairment does not medically equal a listed impairment from Appendix 1 of the Listing of Impairments and does not functionally equal a listed impairment.  In reaching this conclusion the ALJ considered the six functional domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d). The ALJ found "marked" impairment in interacting and relating with others, but less than "marked" or no limitation in the remaining five domains. (Tr. 16-20).

This denial of Child's SSI became the final decision of the Commissioner following denial of review by the Appeals Council. Plaintiff argues the ALJ's finding that her son's impairment does not functionally equal a listed impairment is not supported by substantial evidence.

## Standard of Review

Judicial review is limited to "whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied." *Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Accordingly, the Court must defer to the ALJ's determination "if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision." *Elam,* 348 F.3d at 125 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## Functional Equivalence

A Child's SSI claim undergoes a three step review process. 20 C.F.R. § 416.924(a). These steps determine whether: 1) the child is engaged in substantial gainful activity; 2) there is severe impairment or combination of impairments; and 3) the severe impairment, or combination of impairments, medically or functionally equals the Listing of Impairments. Under 20 C.F.R. § 416.926a, "if a child's impairment – or combination of impairments – does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are functionally equivalent in severity to any of the listed impairments of Appendix 1." *Elam*, 348 F.3d at 126.

Functional equivalency is measured under six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i-vi). Plaintiff must demonstrate "marked" limitation in two domains or an "extreme" limitation in one. § 416.926a(a) & (d). "Marked" limitation may be demonstrated by two means relevant to this matter. One is "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and . . . day-to-day functioning in domain-related activities is consistent with that score. § 416.926a(e)(2)(iii). Alternatively, "marked" limitation is shown "in a domain when [the child's] impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2)(i).

3

**Analysis**

*Failure to Explain Rationale*

Plaintiff, citing 42 U.S.C. § 405(b)(1), first argues the decision fails to provide the reasons on which it is based. (Doc. 14, at 14). Plaintiff is incorrect. The ALJ must "adequately build an accurate and logical bridge from the evidence to the conclusion" that child is not disabled. *Giles* ex rel. *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted). "[W]here the ALJ's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'" *Giles*, 483 F.3d at 486 (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

The ALJ spent nearly a page discussing each domain except "[h]ealth and physical well-being," where he found no evidence of limitation. (Tr. 16-20). The ALJ's reasoning with respect to the domains is by no means conclusory. *Compare Giles*, 483 F.3d at 487-88 ("Although the ALJ found that Damien was markedly limited in acquiring and using information, the ALJ summarily concluded that 'in all other domains and areas of functioning the claimant has some deficits, but is less than markedly limited.'"); *Brindisi* ex rel. *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (ALJ only addressed whether impairments met listing and did not address functional equivalence); *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002) (ALJ concluded merely that child's "difficulties did not meet or equal any impairments in the SSA's listings"). The ALJ adequately built a logical bridge from the evidence to the conclusion that the child is not disabled.

*IEP Reports*

Plaintiff argues the ALJ's analysis was not accurate. (Doc. 14, at 15). Under the domain of "acquiring and using information", the ALJ found the "evidence in the record shows that the

4

claimant is making improvements in this domain", referring to the IEP progress reports. (Tr. 16). Plaintiff argues the IEP progress notes from June 9, 2007 show the child had not met any IEP goals by this date. (Tr. 421-23). But the ALJ never said that the child did. (Tr. 16). The ALJ's statement was accurate because the IEP progress notes from October 2007, January 13, 2008, and March 31, 2008 showed progress. (*See* Tr. 16, 421-23). The first date listed, June 9, 2007, is the benchmark from which the child was able to pass the first grade after repeating it and later passed the second grade without repetition. (Tr. 16). Plaintiff selects some negative IEP comments from this report. (Doc. 14, at 16). However, these do not show the ALJ was inaccurate or selective, because the IEP concluded the child made progress and met or nearly met the goals set. (Tr. 421-23).

*2008 Grade Report*

Plaintiff next attempts to diminish the significance of the child's grade report for 2008. (Tr. 424-28). The ALJ explained this report evidenced the child met "expectations with minimal support in a majority of the grading criteria and shows consistent, strong, independent progress specifically in several of the grading criteria for mathematics." (Tr. 16, 424-28). Plaintiff argues the grade report is unreliable because it is the product of a single teacher and addresses the child's grades in a checkmark style. (Doc. 14, at 16). Nonetheless, it is the product of the child's instructor and the "checkmark-style" indicators are mainly positive. (Tr. 424-28). Further, Plaintiff refers to testing done during the January 2008 term that placed the child in the fourteenth percentile in oral reading fluency. (Tr. 434-35). However, that one factor does not negate the propriety of the ALJ's reliance on the grade report promoting the child to the third grade. (Tr. 16, 28).

*Third Grade Achievement Testing*

Plaintiff uses the third grade achievement testing to point out her son scored in the lower portion of the "minimally proficient" ranges. (Tr. 485). The ALJ did not refer to this testing, but this was harmless because minimal proficiency in acquisition of vocabulary, reading process, "informational text," and "literary text" establishes the child had, consistent with the testing, a degree of proficiency. Thus, this does not equate with "marked" impairment in acquiring and using information.

*The ALJ Did Not Address Dr. Lounder's Report Regarding the Six Domains*

Plaintiff next correctly claims the ALJ did not meaningfully address the report and findings of Dr. Lounder. Rather, the ALJ acknowledged Dr. Lounder's assessments of the child for the period of December 2008 through April 2009. (Tr. 15). During this time, Dr. Lounder administered multiple tests, including:

- K-SADS Semistructured Diagnostic Interview,
- Wechsler Intelligence Scale for Children (WISC-IV),
- Wechsler Individual Achievement Test (WIAT-II),
- Comprehensive Test of Phonological Processing (CTOPP),
- Oral and Written Language Scales (OWLS), and
- multiple Conners, Achenbach, and Beck tests (Parent Rating Scale, Teacher Rating Scale, Child Behavior Checklist, Teacher Report Form, Depression Inventory (BDI-Y), Anxiety Inventory (BAI-Y), and Disruptive Behavior Inventory (BDBD-Y)).

(Tr. 645-46). Though the ALJ provided a general non-critical summary of Dr. Lounder's findings earlier in his decision (Tr. 15), he did not discuss them in the context of the six domains, either by

6

way of applying the findings to his analysis or discounting them for some stated purpose. (Tr. 16-20). This is problematic because the findings, if credited, would have a bearing on the first two domains: Acquiring and Using Information, and Attending and Completing Tasks. The ALJ's decision does not explain whether Dr. Lounder's findings are credited or not, let alone how they fit with the ALJ's analysis of the domains.

    Respondent argues in reply that the ALJ could reasonably find the child's attainment on IEP goals more probative than test scores. But "marked" impairment is defined in relation to test scores. The test scores and the test administrator's interpretation thereof are revealing of the child's limitations and should have been considered and discussed by the ALJ. For example, IQ tests are an important consideration, and are listed in the child's SSI benefit listing § 112.00D(10); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ overlooked a wealth of data on the child's ability to acquire and use information, attend and complete tasks, and interact and relate with others. If the child had a marked limitation in either his ability to acquire and use information or attend and complete tasks, then there would be a marked limitation in at least two domains of functioning, and there would be a finding of disability. Rather than consider this testing data and corresponding report, the ALJ relied on the February 2007 report from the state agency psychologist. (Tr. 15). The ALJ concluded the state agency psychologist's report and the records that were reviewed at that time were "consistent" with the evidence of record and with treatment records from Child and Adult Behavioral Health (C&A). (Tr. 15). The ALJ did not discuss the weight he gave Dr. Loudner, nor why Dr. Loudner deserved such weight.

    The ALJ could have requested the assistance of an additional psychological review and assessment to include the evidence from 2005 through 2009, rather than resting on a potentially

obsolete February 2007 report. The undersigned cannot recommend that ALJ's decision was supported by substantial evidence when the ALJ's review of the record has been selective. *Cf. Metro. Life Ins. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007) (an administrator acts arbitrarily and capriciously when it "engages in a 'selective review of the administrative record' to justify a decision to terminate coverage.") (quoting *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005)). If there is no expert report for deferral, then the ALJ should have fulfilled that function with a meticulous examination of the data, accompanied by an explanation for why the data did not support marked or extreme impairment in the domains. The ALJ did not consider the significance of the testing data and interpretation. For this reason, the ALJ's examination of the medical record lacks substantial evidence to support the conclusion that the child was not disabled from the time of the May 2, 2005 application through the July 10, 2009 decision date. (*See* Tr. 20).[1]

## Remand for Rehearing

The ALJ's resolution of factual issues is inadequate with respect to Dr. Lounder's report and the review was selective. Congress has authorized reversal under the fourth sentence of 42 U.S.C. § 405(g) "with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174-75 (6th Cir. 1994) (citing *Sullivan v. Hudson*, 490 U.S. 877, 880 (1989)). The standard is that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking," and where no factual issues remain unresolved in the case. *Felisky v. Bowen*, 35 F.3d

---

[1] Plaintiff also faults the ALJ for inaccuracy. The ALJ referred to part of a statement as being from a teacher when it was in fact from a psychologist. (Tr. 16, 466). Again, the ALJ engaged in selective review – noting only the portion of the statement that cognitive abilities will be found in the average range, yet omitting the portion stating the child will be requalified for special education due to a learning disability. (Tr. 466).

1027, 1041 (6th Cir. 1994) (quoting *Faucher,* 17 F.3d 171, 176). In all other instances, remand under the fourth sentence for rehearing is required. *See Faucher,* 17 F.3d at 175-76. Plaintiff argues that the Court find an additional marked impairment in acquiring and using information. Whether Plaintiff's son has such a marked impairment is a factual issue to be determined by an ALJ at a rehearing; the undersigned expresses no opinion about whether the child is in fact disabled. Factual issues remain unresolved; consequently, the undersigned recommends a remand for rehearing.

## Conclusion and Recommendation

The ALJ's decision to deny child's SSI benefits was based on a disregard and selective review of the record evidence. The administrative decision consequently lacks substantial evidence supporting it. Therefore, the undersigned recommends the administrative decision be reversed and remanded under the fourth sentence of 42 U.S.C. § 405(g) for rehearing.

                                                      s/James R. Knepp II
                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).